UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CYRUS KAR, *et al.*,

             Petitioners,

    v.

GEORGE W. BUSH, *et al.*,

             Respondents.

No. 05-cv-1348 (JR)

---

**NOTICE OF VOLUNTARY DISMISSAL**

Pursuant to Fed. R. Civ. P. 41(a)(1)(i), petioners hereby dismiss this action voluntarily.

•      •      •      •      •

The petition in this case was filed on July 6, 2005.  It alleged that petitioner Cyrus Kar is a United States citizen and a veteran of the United States Navy residing in Los Angeles who works as a documentary filmmaker.  He has been working on a documentary film on the historical figure of Cyrus the Great, a Persian emperor believed to be the first ruler in all of history to actively promote human rights.

In May 2005, after obtaining visas and permission from the Iraqi, American, and Kurdish authorities, Mr. Kar went to Iraq with a cameraman in order to film footage of Babylon, an area in present-day Iraq that was the site of one of Cyrus the Great's most important military victories.

On or about May 17, 2005, Mr. Kar and his cameraman Farshid Faraji hailed a taxi in Baghdad to go to a historical site for filming.  On the way, the taxi was stopped at a routine vehicle checkpoint, where Iraqi police found a number of washing machine timers in the

trunk of the car.  Such washing machine timers allegedly have been used to make improvised explosive devices in Iraq.  Upon finding the timers, Iraqi police arrested Mr. Kar, Mr. Faraji, and the taxi driver.  After Mr. Kar informed the Iraqi police that he was an American citizen and showed his U.S. passport, he and Mr. Faraji were transferred to U.S. military custody. Eventually he was transferred to the U.S. military detention facility at Camp Cropper, where he remained for almost the next two months, even after the military and the FBI concluded that he was innocent of any misconduct.

The U.S. military placed Mr. Kar in solitary confinement at Camp Cropper in a one-person cell that measured approximately eight feet by eight feet and had no windows.  Mr. Kar spent 23 hours a day inside his cell.  For approximately one hour each day, the military allowed Mr. Kar to go for recreation into a 15' x 15' chain-link cage that was placed outdoors and covered with a tarp on all sides.

Some time after Mr. Kar came to Camp Cropper, an FBI agent interrogated him. Prior to the interrogation, the FBI agent showed Mr. Kar a document stating that he had the right to an attorney.  Mr. Kar asked if he could have an attorney.  The FBI agent told him that attorneys were not available, and that the last person who had requested an attorney was detained for more than two years in Afghanistan.  Because he had no choice, Mr. Kar agreed to answer the FBI agent's questions, without an attorney present.

The FBI agent asked Mr. Kar if he would agree to a search of his home and property in Los Angeles and to take a lie detector test.  Mr. Kar agreed, repeating to the FBI agent that because he had no connection whatsoever to the taxi driver or the washing machine timers, he had nothing to hide.

2

1    On or about May 24, 2005, FBI agents conducted an exhaustive search of Mr. Kar's

2    apartment in Los Angeles.  They seized his belongings, including his computer, hard drives,

3    film footage, and files containing personal and financial records.  The agents also surveyed

4    the residence, which included prominent photographs of Mr. Kar serving in the Navy and a

5    huge American flag hung over his bed.  About two weeks later, FBI agents returned Mr.

6    Kar's belongings to his family members.  At that time, an FBI agent told Mr. Kar's family

7

8    that he had been cleared of all suspicion, and that he looked forward to meeting Mr. Kar

9    upon his return to Los Angeles

10    The FBI also administered a lie detector test to Mr. Kar while he was in custody.

11    Before taking the test, Mr. Kar again asked for an attorney, and the FBI once more denied his

12    request, stating that attorneys were not available.  Mr. Kar nevertheless took the lie detector

13    test.  He answered all the questions truthfully, and the person who administered the test

14

15    privately told Mr. Kar that he had successfully passed.

16    After the lie detector examination took place, neither the FBI, the military, nor any

17    other government agency conducted any further investigation of Mr. Kar.

18    The U.S. military did not give Mr. Kar any information about how long he would be

19    detained or whether he would get an attorney or see a judge.  The government did not file

20

21    any criminal charges against Mr. Kar.  He remained for several additional weeks in detention

22    not knowing what would happen to him.

23    During his detention, the military deprived Mr. Kar of regular telephone contact with

24    his family or friends, allowing only three short closely-monitored telephone calls with his

25    family.

26

27

28

3

On July 1, 2005, the Camp Commander gave Mr. Kar a written notice informing him that the military had scheduled a Detainee Status Board hearing on July 4, 2005 to determine Mr. Kar's status under the Geneva Conventions.

To present his defense, Mr. Kar asked the judges for an attorney.  He also asked for the people who had interrogated and exonerated him, both from the military and from the FBI, and for the reports those officials had produced.  He also asked for the results of his lie detector test, his medical records while in custody, and for his cameraman Farshid to serve as a witness.

The judges denied Mr. Kar's request for an attorney.  They also told Mr. Kar that all the documents he requested were unavailable, except for the lie detector test results, which they read aloud.  (The lie detector results confirmed his innocence.)  With respect to his request for witnesses, they told Mr. Kar that all the witnesses were unavailable except for Mr. Kar's cameraman, who was produced for the hearing.

At his hearing, Mr. Kar testified that he had no connection to the taxi driver or the washing machine timers.  His cameraman also testified to the same. The judges then sent Mr. Kar out of the room for a few minutes.  When they called him back in, the judges informed him that they had found him innocent and were recommending his release from detention.

On July 6, 2005, Mr. Kar was given a letter stating that a Detainee Status Board had determined that he was an "Innocent Civilian" under the Geneva Convention, and that he should be immediately returned to his home or released.   Yet Mr. Kar was kept in detention, with no word on when or whether he would be released.

4

1     As noted above, this petition for habeas corpus was filed on July 6.  That same day,

2   the Court ordered the government to show cause by July 11 why Mr. Kar should not be

3   released.  On July 10, Mr. Kar was finally released from detention.  After his release, Mr.

4   Kar's attorneys negotiated with the government to issue him a new passport, as the military

5   had destroyed his prior passport while he was in custody.  Mr. Kar was able to return to the

6   United States on or about July 17, 2005.

7

8     The principal relief sought by this petition having been obtained, plaintiffs dismiss

9   the petition voluntarily.

10                                           Respectfully submitted,

11

12                                           /s/

13                                           _____
                                             Mark D. Rosenbaum
14                                           Ahilan T. Arulanantham
                                             Ranjana Natarajan
15                                           ACLU Foundation of Southern California
                                             1616 Beverly Boulevard
16                                           Los Angeles, California  90026
                                             Tel:  (213) 977-9500, x224
17

18                                           /s/

19                                           _____
                                             Arthur B. Spitzer
20                                              D.C. Bar No. 235960
                                             American Civil Liberties Union
21                                              of the National Capital Area
                                             1400 20th Street, N.W. #119
22                                           Washington, D.C.  20036
                                             Tel: (202) 457-0800
23

24

25

26
                                           5
27

28

Steven R. Shapiro
Lucas Guttentag
Lee Gelernt
Ben Wizner
American Civil Liberties Union Foundation
125 Broad Street
New York, New York  10004
Tel: (212) 549-2500

Erwin Chemerinsky
Duke University School of Law
Science Drive & Towerview Road
Durham, North Carolina 27708
Tel: (919) 613-7173

Paul Hoffman,
Schonbrun, DeSimone, Seplow, Harris & Hoffman
723 Ocean Front Walk
Venice, California  90291
Tel: (310) 396-0731

Counsel for Petitioners

December 19, 2005

6